**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CLIFTON STANLEY DIAZ, JR.,<br>   Plaintiff,<br><br>     v.<br><br>WASHINGTON METROPOLITAN AREA<br>TRANSIT AUTHORITY,<br>   Defendant. | Civil Action No. 15-442 (CKK) |

**MEMORANDUM OPINION**
(March 22, 2017)

Plaintiff Clifton Stanley Diaz filed suit against Defendant Washington Metropolitan Area Transit Authority ("WMATA") alleging violations of Title VII of the Civil Rights Act of 1964 after he was terminated from his employment as a probationary officer with WMATA's Metro Transit Police Department ("MTPD"). Plaintiff alleges that Defendant discriminated against him on the basis of his national origin and sexual orientation. Presently before the Court is Defendant's [21] Motion for Summary Judgment. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court shall GRANT Defendant's Motion. Plaintiff has not presented evidence that would allow a reasonable juror to find that Defendant's asserted non-discriminatory reason for terminating Plaintiff was not Defendant's actual reason for doing so.

---

[1] The Court's consideration has focused on the following documents and their attachments and/or exhibits: Def.'s Mot. for Summary Judgment, ECF No. [21] ("Def.'s Mot."); Pl.'s Resp. to Def.'s Mot. for Summary Judgment, ECF No. [22] ("Pl.'s Resp."); and Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summary Judgment, ECF No. [23] ("Def.'s Reply"). In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

1

## I. BACKGROUND

Plaintiff Clifton Stanley Diaz was employed as a probationary recruit police officer with the MTPD until his termination in 2013. Def.'s Stmt. of Material Facts Not in Dispute, ECF No. [21-1] ("Def.'s Stmt."), ¶¶ 1, 7. In 2013, MTPD conducted an investigation into allegations that Plaintiff had abandoned his Field Training Officer ("FTO") during a service call, returned to the police station without said FTO, failed to submit his paperwork for review by a supervising official, and failed to check off with the official on duty before ending his shift. *Id.* ¶ 4; *see also* Def.'s Stmt., Exs. 1, 2 (May 7, 2013 and May 27, 2013 MTPD Investigative Reports outlining Plaintiff's alleged misconduct). As a result of the investigation, MTPD charged Plaintiff with a violation of its Ethical Standards of Conduct and Financial Interest, General Order # 217, section III.A, number 3, which states that "Members will respond promptly and truthfully to all inquiries initiated by an official" and "will not knowingly make false statements in any written or verbal reports." Def.'s Stmt. ¶ 5. The MTPD subsequently terminated Plaintiff, effective June 1, 2013. *Id.* ¶ 7. According to Defendant, Plaintiff was terminated as a result of this investigation and due to his failure to satisfactorily complete his field training program. *Id.* ¶ 6; *see also* Def.'s Stmt., Ex. 3 (May 31, 2013 MTPD Field Training Failure Notice summarizing "performance deficiencies exhibited by Recruit Officer Clifton Diaz during his Field Training").

Plaintiff has not presented evidence that rebuts the facts laid out above, but claims that he was in fact discharged either because he is Hispanic[2] or because his superiors at WMATA "perceived [him] to be gay." Def.'s Stmt., Ex. 5 (Deposition of Clifton Stanley Diaz) at 18:6-12. Plaintiff expounded on the basis for his claims at his deposition. At that deposition, Plaintiff

---

[2] Plaintiff refused at his deposition to provide additional detail as to his national origin beyond asserting that he is Hispanic. Def.'s Stmt., Ex. 5 at 16:9-15.

stated that he "was the only Hispanic in [his] training group." *Id.* at 16:2-3. He further stated that "[t]he Deputy Police Chief, Jeffrey Delinski, asked me if I had girlfriends. When I responded no, he laughed and chuckled, then discharged me." *Id.* at 16:21-17:1. Additionally, Plaintiff—who has repeatedly indicated that he is a heterosexual—claims that he overheard two unidentified peers at WMATA refer to him using a derogatory term for homosexuals. *Id.* at 17:12-13, 19:3-4, 22:6-23:4. Finally, Plaintiff stated that he was required to wear pants that did not fit him. *Id.* at 17:13-20.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See*

*Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

In recognition of the difficulty in uncovering clear evidence of discriminatory or retaliatory intent, the district court should approach summary judgment in an action for employment discrimination or retaliation with "special caution." *Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997), *vacated on other grounds*, 156 F.3d 1284 (D.C. Cir. 1998) (*en banc*). Be that as it may, the plaintiff is not relieved of his burden to support his allegations with competent evidence. *Brown v. Mills*, 674 F. Supp. 2d 182, 188 (D.D.C. 2009). As in any

context, where the plaintiff would bear the burden of proof on a dispositive issue at trial, then at the summary judgment stage he bears the burden of production to designate specific facts showing that there exists a genuine dispute requiring trial. *Ricci v. DeStefano*, 557 U.S. 557 (2009). Otherwise, the plaintiff could effectively defeat the "central purpose" of the summary judgment device—namely, "to weed out those cases insufficiently meritorious to warrant . . . trial"—simply by way of offering conclusory allegations, speculation, and argument. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### III.  DISCUSSION

Title VII of the Civil Rights Act makes it unlawful for any employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To establish a *prima facie* case under Title VII, a plaintiff must show that he "is a member of a protected class," that he "suffered an adverse employment action," and that "the unfavorable action gives rise to an inference of discrimination." *Youssef v. F.B.I.*, 687 F.3d 397, 401 (D.C. Cir. 2012) (quoting *Stella v. Mineta,* 284 F.3d 135, 145 (D.C. Cir. 2002)).

Plaintiff represents himself *pro se* in this matter and his pleadings are not a model of clarity. Accordingly, two preliminary points must be made. First, Plaintiff appears to allege in his Amended Complaint that he was discriminated against based on his sexual orientation. Am. Compl., ECF No. [20], at 5. However, "Title VII does not prohibit discrimination based on sexual orientation or sexual preference." *Schroer v. Billington*, 424 F. Supp. 2d 203, 208 (D.D.C. 2006). Accordingly, Plaintiff has not established an actionable claim for discrimination based on

his sexual orientation.[3]  That being said, it is unclear from his pleadings whether Plaintiff intended to additionally assert claims for gender or sex-stereotyping, which could be actionable. Assuming that Plaintiff did intend to plead such claims, the Court explains further below why they would not survive summary judgment.

Second, although Plaintiff's pleadings include references to various other conduct, the only actionable "adverse employment action" Plaintiff has alleged in this case is his termination. "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001).  An adverse action must be "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).  In this case, other than Plaintiff's termination, the acts complained of in Plaintiff's pleadings—including comments by Plaintiff's peers and supervisors and issues with Plaintiff's uniform—do not rise to the level of adverse employment actions that could form the basis of a Title VII claim on their own.

Having resolved these preliminary issues, the Court moves on to consider the record as to Plaintiff's allegedly discriminatory termination.  Defendant has proffered a non-discriminatory rationale for this employment action, for which it has provided supporting evidence: Defendant claims that Plaintiff was terminated as a result of the investigation into Plaintiff's alleged misconduct relating to his abandoning of his FTO, which he was determined to have been untruthful about when questioned, as well as Plaintiff's poor evaluations.  Because Defendant

---

[3] Moreover, although Plaintiff appears to suggest that he was mistreated because he was perceived to be a homosexual, Plaintiff has repeatedly indicated that he is in fact a heterosexual.

has proffered such a rationale, it "is no longer relevant" if Plaintiff has established a prima facie case. *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983).  In fact, the Court of Appeals has dictated that this Court "need not—*and should not*—decide" whether the Plaintiff has made out a prima facie case at this stage. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original).  Instead, this Court need only determine whether Plaintiff has "produced sufficient evidence for a reasonable jury to find that the [Defendant's] asserted non-discriminatory reason was not the actual reason and that [Defendant] intentionally discriminated against [Plaintiff] on the basis of" a protected status.  *Id.*  A plaintiff may make this showing by relying on "(1) evidence establishing the plaintiff's prima facie case; (2) evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff, such as independent evidence of discriminatory statements or attitudes on the part of the employer." *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006).

In this case, Plaintiff has not produced sufficient evidence to rebut Defendant's proffered non-discriminatory reason for terminating him.  With respect to Plaintiff's national origin discrimination claim, the only "evidence" the Court can discern from the record is that Plaintiff claims to have been the only Hispanic person in his training group.  This is clearly insufficient evidence for a reasonable jury to conclude that Defendant's non-discriminatory reason for terminating Plaintiff—based on a fully-documented investigation into Plaintiff's alleged wrongdoing and poor evaluations—was false and that Plaintiff was actually terminated due to his national origin.  In fact, the Court does not find that this "evidence" supports that conclusion at all.

Moreover, even if Plaintiff's allegations related to his sexual orientation were construed as actionable gender or sex-stereotype discrimination claims under Title VII, the Court similarly finds that there is not sufficient evidence for a reasonable jury to find that such discrimination was the true purpose of Plaintiff's termination either.  Plaintiff claims that he was required to wear a uniform with ill-fitting pants, was asked if he had "girlfriends," and that he overheard two of his peers—who had no supervisory role over Plaintiff and no apparent involvement with his termination—refer to him by a derogatory term for homosexuals.  Plaintiff's concerns regarding his uniform and the derogatory comments attributed to his peers have no apparent connection to his termination.  Similarly, the comment regarding Plaintiff's "girlfriends," without any context, also provides little if any evidence as to the intent of Defendant in terminating Plaintiff.  The Court of course by no means sanctions any of this alleged conduct.  However, it does conclude that these assertions are not sufficient evidence upon which a reasonable juror could base a conclusion that Defendant's non-discriminatory reason for terminating Plaintiff was not its "actual reason."  *Brady*, 520 F.3d at 494.  Because Plaintiff failed to produce such evidence, Defendant is entitled to summary judgment in its favor.

## IV.  CONCLUSION

For the reasons discussed above, the Court shall GRANT Defendant's [21] Motion for Summary Judgment and DISMISS this case.  An appropriate Order accompanies this Memorandum Opinion.

                                                  /s/
                                           COLLEEN KOLLAR-KOTELLY
                                           United States District Judge